**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------
RYAN O'DELL,                                     :
                                                 :
      Plaintiff,                             :  Civil Action No. 1:23-cv-00082
                                                 :
v.                                               :  **COMPLAINT FOR VIOLATIONS OF**
                                                 :  **SECTIONS 14(a) AND 20(a) OF THE**
HORIZON THERAPEUTICS PUBLIC                      :  **SECURITIES EXCHANGE ACT OF**
LIMITED COMPANY, TIM WALBERT,                    :  **1934**
MICHAEL GREY, WILLIAM F. DANIEL,                 :
JEFF HIMAWAN, PH.D., SUSAN                       :  **JURY TRIAL DEMANDED**
MAHONY, PH.D., GINO SANTINI, JAMES               :
SHANNON, M.D., H. THOMAS WATKINS,                :
and PASCALE WITZ,                                :
                                                 :
      Defendants.                            :
---------------------------------------------------------

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Horizon Therapeutics Public Limited Company ("Horizon" or the "Company") and the members of Horizon's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Horizon by affiliates of Amgen Inc. ("Amgen").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Definitive Proxy Statement on Schedule 14A (the

"Proxy Statement") to be filed on December 30, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Pillartree Limited ("Merger Sub"), a wholly owned subsidiary of Amgen, will acquire Horizon, with Horizon becoming a wholly owned subsidiary of Amgen (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on December 11, 2022 (the "Merger Agreement"), each Horizon stockholder will receive $116.50 in cash (the "Merger Consideration") for each Horizon share owned.

3. As discussed below, Defendants have asked Horizon's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley") in support of its fairness opinions.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Horizon's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction), as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, an owner of Horizon stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Tim Walbert has served as a member of the Board since June 2008 and is the Chairman of the Board and the Company's President and Chief Executive Officer.

11. Individual Defendant Michael Grey has served as a member of the Board since September 2011 and is the Lead Independent Director.

12. Individual Defendant William F. Daniel has served as a member of the Board since September 2014.

13. Individual Defendant Jeff Himawan, Ph.D. has served as a member of the Board since July 2007.

14. Individual Defendant Susan Mahony, Ph.D. has served as a member of the Board since August 2019.

15. Individual Defendant Gino Santini has served as a member of the Board since March 2012.

16. Individual Defendant James Shannon, M.D. has served as a member of the Board since August 2017.

17. Individual Defendant H. Thomas Watkins has served as a member of the Board since April 2014.

18. Individual Defendant Pascale Witz has served as a member of the Board since August 2017.

19. Defendant Horizon is a public limited company incorporated under the laws of Ireland and maintains its principal offices at 70 St. Stephen's Green, Dublin 2, D02 E2X4, Ireland. The Company's stock trades on the NASDAQ Global Select Market under the symbol "HZNP."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

A.  **The Proposed Transaction**

22. Horizon, a biotechnology company, focuses on the discovery, development, and commercialization of medicines that address critical needs for people impacted by rare, autoimmune, and severe inflammatory diseases. The Company operates in two segments, Orphan and Inflammation. Its portfolio comprises twelve medicines in the areas of rare diseases, gout, ophthalmology, and inflammation. It markets TEPEZZA (teprotumumab-trbw) for intravenous infusion; KRYSTEXXA (pegloticase injection) for intravenous infusion; RAVICTI (glycerol phenylbutyrate) oral liquid; PROCYSBI (cysteamine bitartrate) delayed-release capsules and

4

granules for oral use; ACTIMMUNE (interferon gamma-1b) injection for subcutaneous use; BUPHENYL (sodium phenylbutyrate) tablets and powder for oral use; QUINSAIR (levofloxacin) solution for inhalation; and UPLIZNA (inebilizumab-cdon) injection for intravenous use.  The Company also markets PENNSAID (diclofenac sodium topical solution) for topical use; DUEXIS (ibuprofen/famotidine) tablets for oral use; RAYOS (prednisone) delayed-release tablets for oral use; and VIMOVO (naproxen/esomeprazole magnesium) delayed-release tablets for oral use.  It has collaboration agreements with HemoShear Therapeutics, LLC; Alpine Immune Sciences, Inc.; Halozyme Therapeutics, Inc.; Arrowhead Pharmaceuticals, Inc.; and Xeris Biopharma Holdings, Inc.  The Company was formerly known as Horizon Pharma Public Limited Company and changed its name to Horizon Therapeutics Public Limited Company in May 2019.  Horizon was founded in 2005 and is headquartered in Dublin, Ireland with additional offices in Deerfield, Illinois; Chicago, Illinois; Lake Forest, Illinois; San Francisco, California; Washington, D.C.; Gaithersburg, Maryland; Rockville, Maryland; and Mannheim, Germany.

23. On December 12, 2022, the Company and Amgen jointly announced the Proposed Transaction:

> THOUSAND OAKS, Calif., Dec. 12, 2022 /PRNewswire/ -- ***NOT FOR RELEASE, PUBLICATION OR DISTRIBUTION, IN WHOLE OR IN PART, IN, INTO OR FROM ANY JURISDICTION WHERE TO DO SO WOULD CONSTITUTE A VIOLATION OF THE RELEVANT LAWS OR REGULATIONS OF SUCH JURISDICTION***
>
> ***THIS ANNOUNCEMENT IS BEING MADE PURSUANT TO RULE 2.7 OF THE IRISH TAKEOVER RULES***
>
> ***FOR IMMEDIATE RELEASE***
>
> **RECOMMENDED CASH OFFER**
>
> for

# HORIZON THERAPEUTICS PLC

## by

## Pillartree Limited, a newly formed private limited company wholly owned by Amgen Inc.

## to be implemented by way of a scheme of arrangement under Chapter 1 of Part 9 of the Companies Act 2014

**Summary**

- The board of directors of Horizon Therapeutics plc (the "**Company**" or "**Horizon**") and the board of directors of Amgen Inc. ("**Amgen**") are pleased to announce that they have reached agreement on the terms of a cash offer for the Company by Pillartree Limited ("**Acquirer Sub**"), a newly formed private limited company wholly owned by Amgen, which is unanimously recommended by the Company Board and pursuant to which Acquirer Sub will acquire the entire issued and to be issued ordinary share capital of the Company. Under the terms of the Acquisition, each Company Shareholder at the Scheme Record Time will be entitled to receive:

**$116.50 for each Company Share in cash**

- The Acquisition represents:
    - a premium of approximately 47.9% to the closing price of $78.76 per Company Share on November 29, 2022 (being the last closing price per Company Share prior to the Company's issuance of an announcement of a possible offer under Rule 2.4 of the Irish Takeover Rules); and
    - a premium of approximately 19.7% to the closing price of $97.29 per Company Share on December 9, 2022.

- The Acquisition values the entire issued and to be issued ordinary share capital of the Company at approximately $27.8 billion on a fully diluted basis and implies an enterprise value of approximately $28.3 billion.

- Amgen has entered into a Bridge Credit Agreement, dated December 12, 2022, for an aggregate amount of $28.5 billion, by and among Amgen, Citibank N.A., as administrative agent, Bank of America, N.A., as syndication agent, and Citibank, N.A. and Bank of America, N.A. as lead arrangers and book runners, and the other banks from time to time party thereto to finance, together

with Amgen's own cash resources, the Acquisition. Further information on the financing of the Acquisition will be set out in the Proxy Statement (which will include the Scheme Document).

- Commenting on today's announcement, Tim Walbert, chairman, president and chief executive officer of the Company said:

*"In nearly 15 years, we have built one of the fastest growing and most respected companies in the biotechnology industry from the ground up. We have accomplished a tremendous amount for patients, their families and our customers, and created significant value for shareholders. These accomplishments are all rooted in our employees' deep commitment, dedication and personal passion for those impacted by rare, autoimmune and severe inflammatory diseases. Amgen is aligned with that commitment and passion and will continue to maximise the value of the current portfolio and pipeline and accelerate the ability to reach more patients globally."*

- Commenting on today's announcement, Robert A. Bradway, chairman and chief executive officer of Amgen said:

*"The acquisition of Horizon is a compelling opportunity for Amgen and one that is consistent with our strategy of delivering long-term growth by providing innovative medicines that address the needs of patients who suffer from serious diseases. Amgen's decades of leadership in inflammation and nephrology, combined with our global presence and world-class biologics capabilities, will enable us to reach many more patients with first-in-class medicines like TEPEZZA, KRYSTEXXA and UPLIZNA. Additionally, the potential new medicines in Horizon's pipeline strongly complement our own R&D portfolio. The acquisition of Horizon will drive growth in Amgen's revenue and non-GAAP EPS and is expected to be accretive from 2024."*

**Amgen Background to and Reasons for the Acquisition**

Amgen believes that there is a compelling strategic and financial rationale for undertaking the Acquisition, which is expected to deliver the following benefits:

- Strengthens Amgen's portfolio of first-in-class / best-in-class innovative therapeutics by adding a complementary portfolio of medicines from Horizon that address the needs of patients suffering from rare diseases;

7

- Capitalises on Amgen's 20-year commercial and medical legacy in inflammation and nephrology and its global scale to enhance the growth potential of Horizon's portfolio;

- Utilises Amgen's industry-leading research and development, process development and global manufacturing expertise in biologic medicines for the benefit of Horizon's approved medicines and potential new medicines;

- Generates robust cash flow (approximately $10 billion combined over twelve months through Q3 2022)[1] to support capital allocation priorities, including ongoing investment in innovation and continued dividend growth while sustaining a commitment to an investment grade credit rating;

- Accelerates revenue growth and is expected to be accretive to non-GAAP earnings per share from 2024; and
- Increases efficiency for the Combined Group, leading to an estimated annual pre-tax cost reduction of at least $500 million by the end of the third fiscal year following Completion.

**Company Board Recommendation**

- Having taken into account the relevant factors and applicable risks, the Company Board, which has been so advised by Morgan Stanley, which as financial advisor to the Company Board has rendered a fairness opinion, considers the terms of the Acquisition as set out in this Announcement to be fair and reasonable. In providing its advice to the Company Board, Morgan Stanley has taken into account the commercial assessments of the Company Directors. The Company Board has unanimously determined that the Transaction Agreement and the Transactions, including the Scheme, are advisable for, fair to and in the best interests of, the Company Shareholders.

- Accordingly, the Company Board unanimously recommends that Company Shareholders vote in favour of the Scheme Meeting Resolution and the Required EGM Resolutions, or, if the Acquisition is implemented by a Takeover Offer, accept or procure acceptance of such Takeover Offer.

**Timeline and Conditions**

- It is agreed that the Acquisition will be implemented by way of an Irish High Court-sanctioned scheme of arrangement under Chapter 1 of Part 9 of the Irish Companies Act (although Acquirer Sub reserves the right to effect the Acquisition by way of a Takeover

Offer, subject to the provisions of the Transaction Agreement and the Irish Takeover Rules and with the consent of the Irish Takeover Panel).

- The Acquisition will be subject to the satisfaction or waiver (as applicable) of the Conditions, which are set out in full in Appendix 3 (*Conditions of the Acquisition and the Scheme*) to this Announcement, including, in summary:
    - the requisite approval by Company Shareholders of the Scheme Meeting Resolution and the Required EGM Resolutions;
    - the sanction of the Scheme by the Irish High Court; and
    - the receipt of required antitrust clearances in the United States, Austria and Germany and the receipt of required foreign investment clearances in France, Germany, Denmark and Italy.

- It is expected that the Scheme Document, containing further information about the Acquisition and notices of the Scheme Meeting and the EGM, the expected timetable for Completion and action to be taken by Company Shareholders, will be published as soon as practicable. It is anticipated that the Scheme will, subject to obtaining the necessary regulatory approvals, be declared effective in the first half of 2023. An expected timetable of key events relating to the Acquisition will be provided in the Scheme Document.

[1] For the twelve months through Q3 2022, Amgen GAAP operating cash flow of $9.88 billion less Amgen capital expenditures of $883 million plus Horizon GAAP operating cash flow of $1.37 billion less Horizon capital expenditures of $56 million = ~$10 billion

**Advisors**

- The Company's financial advisors in respect of the Acquisition are Morgan Stanley and J.P. Morgan. The Company's legal advisors are Cooley LLP and Matheson LLP.
- Amgen's lead financial advisor in respect of the Acquisition is PJT Partners and its financial advisor is Citigroup. Amgen's legal advisors are Sullivan & Cromwell LLP and William Fry LLP.

\* \* \*

24.  The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that Horizon's stockholders are provided with the material information that has been

omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Proxy Statement**

25.     On December 30, 2022, Horizon filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

26.     The Proxy Statement fails to provide material information concerning financial projections by Horizon management and relied upon by Morgan Stanley in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Morgan Stanley to aid them in forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Horizon management provided to the Board and the financial advisors. Courts have uniformly stated that "projections[…] are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate

management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-03 (Del. Ch. 2007).

27. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Net Operating Income After Tax and Unlevered Free Cash Flow; but fails to provide line items used to calculate the metrics or a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). In the case of Unlevered Free Cash Flow, the Proxy Statement also fails to disclose the definition of or formula to calculate the metric.

28. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29. The SEC has noted that:

> [C]ompanies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other

non-discretionary expenditures that are not deducted from the measure.[1]

30. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

31. With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the terminal value for Horizon; (ii) the inputs and assumptions underlying the use of the range discount rates of 8.9% to 10.2%; (iii) the inputs and assumptions for the perpetuity growth rates ranging from -4% to -1%; and (iv) the number of fully diluted outstanding shares of Horizon as of December 8, 2022.

32. With respect to Morgan Stanley's *Sum-of-the-Parts Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the terminal values for each of the medicines and medicine candidates of Horizon; (ii) the inputs and assumptions underlying the use of the range discount rates of 8.9% to 10.2%; (iii) the inputs and assumptions for the perpetuity growth rates ranging from -15% to -100%; (iv) the number of fully diluted outstanding shares of Horizon as of December 8, 2022; (v) the cost of goods sold based on Horizon management estimates; (vi) the selling, general, and administrative expenses and the research and development costs based on Horizon management allocations; (vii) cash flow items allocated as a percentage of net sales based on Horizon management guidance; (viii) range of illustrative aggregate values for each medicine

---

[1] U.S. Securities and Exchange Commission, *Non-GAAP Financial Measures*, last updated Apr. 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

and medicine candidate; and (ix) unallocated selling, general, and administrative expenses and the research and development overhead costs.

33. With respect to Morgan Stanley's *Precedent Transactions – Premia Paid Analysis*, the Proxy Statement fails to disclose: (i) the transactions selected by Morgan Stanley and (ii) the percentage premia paid in those transactions.

34. With respect to Morgan Stanley's *Analyst Price Targets* analysis, the Proxy Statement fails to disclose: (i) the equity research analysts reviewed and (ii) the corresponding price targets published by each research analyst.

35. With respect to J.P. Morgan Securities LLC's ("J.P. Morgan") role as the Company's financial advisor, the Proxy Statement fails to disclose: (i) the fee paid or will be paid to J.P. Morgan; (ii) J.P. Morgan's scope of services for the Company and/or the Board; and (iii) whether J.P. Morgan had previously been engaged by Amgen, Merger Sub, the Company, or entities affiliated with Amgen, Merger Sub, or the Company in the two-year period preceding the Proposed Transaction to perform financial advisory services unrelated to the Proposed Transaction.

36. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

37. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

39. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending that the Company's stockholders vote in favor of the Proposed Transaction.

40. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

41. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

42. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

43. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44. The Individual Defendants acted as controlling persons of Horizon within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Horizon, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of Horizon, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

45. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Horizon, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

47. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

48. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of the Individual Defendants' conduct, Plaintiff will be irreparably harmed.

50. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: January 5, 2023

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

By: */s/ Benjamin Y. Kaufman*
Benjamin Y. Kaufman
Rourke C. Donahue
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4650
Fax: (212) 686-0114
kaufman@whafh.com
donahue@whafh.com

*Attorneys for Plaintiff*